# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

JAMES A. KIMES,

    Plaintiff,

v.                                                         Civ. No. 16-787 SCY

NANCY A. BERRYHILL, Acting
Commissioner of the Social Security
Administration,

    Defendant.

## **ORDER GRANTING PLAINTIFF'S MOTION TO REVERSE OR REMAND**

**THIS MATTER** is before the Court on Plaintiff James Kimes' Motion to Reverse and Remand the Social Security Commissioner's final decision denying Plaintiff disability insurance benefits. Doc. 17. For the reasons discussed below, the Court will GRANT Plaintiff's motion and remand this action to the Commissioner for further proceedings consistent with this opinion.

**I.    Background**

Plaintiff is a sixty-two year old male. Plaintiff filed for disability on April 30, 2013, alleging disability due to degenerative disc disease. AR 11, 72. He alleged a disability onset date of January 16, 2011. AR 11. Plaintiff's claim was initially denied on August 1, 2013, and upon reconsideration on October 11, 2013. AR 11. Plaintiff filed a written request for hearing on November 11, 2013. AR 11. The hearing was held before Administrative Law Judge (ALJ) Eric Weiss on January 15, 2015. AR 11. On March 18, 2015, the ALJ issued his decision denying Plaintiff's claim. AR 18.

Because the parties are familiar with record in this case, the Court will discuss Plaintiff's medical history to the extent that it is relevant to the issues before the Court. Plaintiff reports a long history of back problems. *See* AR 220. In July 2013, Plaintiff received a consultative

examination by Jeffrey Glassheim, D.O. AR 220. Plaintiff reported chronic lower back pain that was exacerbated by sitting, standing, and physical activity. AR 220. Plaintiff indicated that he was unable to obtain treatment for these issues due to financial limitations. Dr. Glassheim found that Plaintiff has mild limitations with sitting, standing, and walking due to degenerative disc disease. AR 225. Dr. Glassheim further found that Plaintiff has mild limitations with lifting and carrying weight and limitations in his ability to bend, stoop, crouch, and squat. AR 225. An x-ray performed that month showed "relatively advanced multilevel degenerative disc disease." AR 228.

In 2014, after Plaintiff obtained financial support, he was treated by Dr. Roland Sanchez. AR 241. Plaintiff had two visits with Dr. Sanchez. Plaintiff reported many of the same issues as he had with Dr. Glassheim. AR 241. Dr. Sanchez found that Plaintiff had good muscle coordination and strength but diminished sensation in his fingers. AR 242. Dr. Sanchez further found that Plaintiff's cervical spine was tender to palpation and had restricted motion but was otherwise normal. AR 242. Dr. Sanchez referred Plaintiff for an MRI. The MRI showed central canal stenosis at one level with foraminal compromise, uncovertebral arthritic changes with bilateral foraminal compromise, and degenerative discs. AR 252. At a follow up appointment a few months later, Dr. Sanchez further recorded tenderness in Plaintiff's lower back, shoulder, wrists, and knees, but noted that his spine was normal at all levels. AR 246.

In June 2014, Dr. Sanchez completed a form entitled "Medical Opinion Re: Ability To Do Work-Related Activities." AR 253. Dr. Sanchez opined that Plaintiff's ability to stand and walk, as well as sit, was limited to less than two hours. AR 253. Dr. Sanchez further found that Plaintiff was limited to carrying less than ten pounds. AR 253. Dr. Sanchez opined that Plaintiff would need the freedom to shift at will between sitting and standing and would need to lie down

at unpredictable times during an eight-hour work day. AR 253. Finally, Dr. Sanchez opined that Plaintiff would, on average, be absent from work three times a month due to his limitations. AR 253. In an affidavit, Dr. Sanchez stated that

> It is my opinion, based on a reasonable degree of medical certainty, that in June of 2012, [Plaintiff] (1) would not have been able to stand and walk for more than 1 hours during an 8 hour [workday], (2) would not have been able to sit for more than 1 hours during an 8 hour [workday], (3) would have had more than 3 absences each month because of the severity and treatment of his medical condition.

AR 254.

Ultimately, after reviewing the evidence, the ALJ gave "little weight" to Dr. Sanchez's opinion. AR 15. The ALJ found that Plaintiff could perform medium work, in that he could lift and carry fifty pounds occasionally and twenty-five pounds frequently. AR 14. The ALJ further found that Plaintiff could stand or walk six hours in an eight-hour work day and sit for two hours with normal breaks. AR 14. Finally, the ALJ found that Plaintiff could frequently climb ramps and stairs and occasionally climb ladders, ropes, and scaffolds, as well as occasionally stoop, crouch, and crawl but frequently kneel. AR 14. The ALJ concluded that there existed work in significant numbers that Plaintiff could perform with these limitations. AR 18. Accordingly, the ALJ denied Plaintiff's claim. Plaintiff appealed the ALJ's determination to the Appeals Council but the Appeals Council denied his request for review. AR 7. This appeal followed.

## I. Applicable Law

### A. Disability Determination Process

A claimant is considered disabled for purposes of Social Security disability insurance benefits if that individual is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death

3

or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Commissioner has adopted a five-step sequential analysis to determine whether a person satisfies these statutory criteria. *See* 20 C.F.R. § 404.1520. The steps of the analysis are as follows:

(1) Claimant must establish that she is not currently engaged in "substantial gainful activity." If claimant is so engaged, she is not disabled and the analysis stops.

(2) Claimant must establish that she has "a severe medically determinable physical or mental impairment . . . or combination of impairments" that has lasted for at least one year. If claimant is not so impaired, she is not disabled and the analysis stops.

(3) If claimant can establish that her impairment(s) are equivalent to a listed impairment that has already been determined to preclude substantial gainful activity, claimant is presumed disabled and the analysis stops.

(4) If, however, claimant's impairment(s) are not equivalent to a listed impairment, claimant must establish that the impairment(s) prevent her from doing her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* § 404.1545(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work. Third, the ALJ determines whether, given claimant's RFC, claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled and the analysis stops.

(5) At this point, the burden shifts to the Commissioner to show that claimant is able to "make an adjustment to other work." If the Commissioner is unable to make that showing, claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 1520(a)(4); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).

### B. Standard of Review

A court must affirm the denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d

799, 800-01 (10th Cir. 1991). In making these determinations, the reviewing court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). For example, a court's disagreement with a decision is immaterial to the substantial evidence analysis. A decision is supported by substantial evidence as long as it is supported by "relevant evidence . . . a reasonable mind might accept as adequate to support [the] conclusion." *Casias*, 933 F.3d at 800. While this requires more than a mere scintilla of evidence, *Casias*, 933 F.3d at 800, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

Similarly, even if a court agrees with a decision to deny benefits, if the ALJ's reasons for the decision are improper or are not articulated with sufficient particularity to allow for judicial review, the court cannot affirm the decision as legally correct. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). As a baseline, the ALJ must support his or her findings with specific weighing of the evidence and "the record must demonstrate that the ALJ considered all of the evidence." *Id.* at 1009-10. This does not mean that an ALJ must discuss every piece of evidence in the record. But, it does require that the ALJ identify the evidence supporting the decision and discuss any probative and contradictory evidence that the ALJ is rejecting. *Id.* at 1010.

## II.    Analysis

Plaintiff raises a number of issues for review. Plaintiff first argues that the ALJ failed to conduct a proper treating physician analysis in rejecting Dr. Sanchez's opinions. Doc. 17 at 3. Second, Plaintiff argues that the ALJ's RFC was unsupported by the evidence because it failed to explain how Plaintiff could perform the functions that his past work as a tractor/trailer driver

required. Doc. 17 at 3. Third, Plaintiff contends that the vocational expert's testimony was unreliable because the ALJ did not include all of Plaintiff's relevant limitations in his RFC, in addition to failing to resolve a conflict between the vocational expert's testimony and the dictionary of occupational titles. Doc. 17 at 3. Because the Court agrees with Plaintiff's first contention, and will remand on that basis, it will not address Plaintiff's remaining arguments.

Social Security regulations require that, in determining disability, the opinions of treating physicians be given controlling weight when those opinions are well-supported by the medical evidence and are consistent with the record. 20 C.F.R. 404.1527(c)(2); 416.927(c)(2). This is known as the "treating physician rule." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). The idea is that a treating physician provides a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations," and therefore, a treating physician's opinion merits controlling weight. *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003).

However, in order to receive controlling weight, a treating physician's opinion must be both supported by medical evidence and consistent with the record. If not, the opinions may not merit controlling weight but still must be given deference and must be weighed using the following six factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 250 F.3d 1297, 1301 (10th Cir. 2003); *see also* 20 C.F.R. §§ 404.1527(c), 416.927(c). Not every factor is applicable in every case, nor should all six factors be seen as

6

absolutely necessary. What is necessary, however, is that the ALJ give good reasons—reasons that are "sufficiently specific to [be] clear to any subsequent reviewers"— for the weight that she ultimately assigns to the opinions. *Langley*, 373 F.3d at 1119; *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Branum v. Barnhart*, 385 F.3d 1268, 1275 (10th Cir. 2004).

In sum, when properly rejecting a treating physician's opinion, an ALJ must follow two steps. First, the ALJ must find that the opinion is (a) not supported by medical evidence and/or (b) not consistent with the record. Second, the ALJ must still give deference to the opinion and weigh it according to the factors listed above. Like all findings, an ALJ's findings in these two steps must be supported by substantial evidence.

In the present case, the ALJ accorded "little weight" to Dr. Sanchez's opinions regarding Plaintiff's limitations. The ALJ stated that he gave the opinions little weight due to the fact that Dr. Sanchez treated Plaintiff nearly two years after the relevant timeframe and he therefore "would not have been privy to such information." AR 15. The ALJ therefore concluded that Dr. Sanchez's opinion was "too speculative." AR 15.

Upon review of the ALJ's findings regarding Dr. Sanchez's opinions, the Court concludes that the ALJ failed to properly apply the treating physician rule. As for the first step of the analysis, the ALJ neither found Dr. Sanchez's opinion to be unsupported by the medical evidence nor inconsistent with the record. Notably, Dr. Sanchez stated in his affidavit that he based his opinion, in part, on his review of Plaintiff's previous medical records that indicated that Plaintiff had "relatively advanced multi-level degenerative disc disease." AR 254. Thus, in determining whether Dr. Sanchez's opinions were entitled to controlling weight, the ALJ would need to at least discuss why he would find Dr. Sanchez's opinions either inconsistent with or unsupported by Plaintiff's medical records, scant as they were.

7

Even assuming the ALJ's finding regarding the speculative nature of Dr. Sanchez's opinion was sufficient to not give it controlling weight, the ALJ further failed to engage in the second part of the treating physician analysis. Granted, the timing of Dr. Sanchez's opinions may be a relevant factor in determining the ultimate weight to assign them. However, the timing itself is not dispositive. *See Rogoff v. Astrue*, Civ. No. 10-1041 LAM, Doc. 27 at 14 (D.N.M. Nov. 28, 2011) (rejecting argument that treating physician's opinion can be discounted solely on the timing of the physician's review of the plaintiff). Furthermore, the Court notes that Defendant raises a number of other relevant contentions as to why the ALJ might give Dr. Sanchez's opinion little weight. Chief among these justifications—putting aside the possible speculative nature of the opinions—is the short duration of the treating relationship. *See Watkins*, 250 F.3d at 1301 (stating that the length of the treating relationship is a relevant factor in determining what weight to assign a treating physician's opinions). However, the ALJ never discussed these issues and Defendant raises no more than post-hoc justifications for the ALJ's decision. *See Haga v. Astrue*, 482 F.3d 1205, 1207 (stating that the court "may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself"). Accordingly, because the ALJ failed to conduct a proper treating physician analysis, the Court will remand this case for further consideration. *See Watkins*, 350 F.3d at 1300. (stating that a court must remand when it "cannot meaningfully review the ALJ's determination absent findings explaining the weight assigned to the treating physician's opinion.").

### III. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's Motion to Remand to Agency (Doc. 17). The Court therefore reverses the Commissioner's decision denying Plaintiff benefits

and remands this action to the Commissioner to conduct further proceedings consistent with this Opinion.

_____
UNITED STATES MAGISTRATE JUDGE
Sitting by Consent